The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good morning. The first case of the day is N. Ray Guardianship of Jagger Ort, a minor. It involves consolidated appeals. Case number 4-24-1026, James Ort Sr. v. Jasmine Oliver. And appeal number 4-24-1063, James Oliver Jr. v. Jasmine Oliver. I believe I have that correct. Could we proceed with appearances? First for James Ort Sr. Mindy Cadoba. Thank you. And for James Ort Jr.? Daniel Kevin Summer. I'm sorry, Your Honor. Yes. The appearance for James Ort Jr., please. Brandy Cadoba. Okay. And then for Jasmine Oliver? Sorry, Your Honor. For Jasmine Oliver and Daniel Kevin Summer. All right. And Mr. Summer, could you repeat your appearance? I just want to make sure your audio is working. Thank you. Yes. My appearance is for Jasmine Oliver. Daniel Kevin Summer for Jasmine Oliver. Okay. Thank you. It's my understanding that for James Ort Sr. and James Ort Jr., the appellant's argument time will be split between the attorneys. Is that right? Yes. All right. And Attorney Mindy Cadoba, you're going to proceed first? Correct. Okay. You may proceed. May it please the court and counsel. I'm Mindy Cadoba, and I represent the appellant, James Ort Sr. This is a guardianship case in which the trial court terminated a three-year guardianship of an eight-year-old child, returned the child to the sole custody of his mother, and ordered the child to be relocated to Arizona. The trial court entered this judgment even though the child's mother had been repeatedly absent from his life since birth, had always relied upon the guardian or someone else to care for and financially support the child, left the child behind in Illinois and moved to Arizona, had come back to Illinois and exercised a few months of consistent visitation after an absence of more than a year, and then had chosen to return to Arizona seven months before judgment, cutting off almost all contact with the child. The trial court entered this judgment even though the child had lived with the guardian almost exclusively for his entire life and exclusively for the past three years, was well-adjusted to his life with the guardian, and was surrounded by extended family on both sides, and had never been to Arizona and had no connections or family there other than his mother. The trial court in this case entered this judgment by ignoring the experts in the case, including the guardian ad litem, and by relying upon facts that were never introduced into evidence, and by refusing to allow additional time for essential new evidence to be introduced, including six DCFS investigations that were opened the same month as trial began, order of protection proceedings against the child's mother and her husband, and a deterioration in the child's mental health status after the child's mother went back to Arizona. I'm going to spend most of my time on the errors in terminating the guardianship, because, as we know, the termination of this guardianship meant that this child was removed from the only home he had ever known and was relocated to Arizona, where it was likely that the child's mother would never allow him to speak to the guardian again, after seeing the guardian basically every day for his entire life. First, counsel, may I ask a question? As you go forward, we're going to get eventually to the issue of consolidation. Can you just briefly explain for us if and why not the consolidation didn't happen? Yes, so the guardian, James Ortt Sr. I'm sorry. I believe that the father had moved to consolidate before the family law court in November. Trial began at the end of November. He had filed a petition, I believe November 9th, and moved to consolidate before the family law court, and the family law court denied consolidation. After that was denied, Jasmine moved in the probate court to consolidate the family law case with the probate courts, and the court also denied consolidation. So both courts denied consolidation. There was a request made before both courts. Thank you. Moving back to my argument, I think that the mother clearly failed to meet her burden of proof that circumstances had changed. Though her lifestyle had improved, I think that the main reason the guardianship was put in place in the first place is because she had been repeatedly absent from the child's life, had always relied upon someone else to care for him, and continued to pop in and out of his life. Now, it is true that she was on drugs and involved in criminal activity just before the guardianship was put in place, but that was not the only reason the guardianship was put in place. The majority of her evidence really focused on her new husband's ability to support and care for the child and not her own. She had never had a job for more than a few weeks or a month. She did get a job when she moved to Arizona, but she immediately quit that job when she met Anthony, who she married a few months later, and he did testify that he was willing to financially support the child, but at the same time, even after she married him, she provided no support and then claimed that she was indigent to receive a fee waiver. So, I think that that evidence was not very persuasive that she was somehow able to now support her child. Additionally, she never exercised any visitation without him present, even though the guardian ad litem had recommended that she work on her relationship with the child, not with her new husband present. He was always there. Additionally, I think that, as mentioned, she had a history of putting herself first, regardless of her lifestyle and the house that she lived in, that she clearly, even throughout the case, had a history of doing things that were not in the best interest of the child, such as refusing to end visitation early if the child was upset or wished to end it early, driving the child around even though they had been in an accident earlier and the child had a fear of being in the vehicle with her. It seemed that she simply was unable to accept the advice of experts or others. And if it was not her way, it was sort of the highway. Either she had visitation on her own terms or she just did not want visitation at all. More importantly than the changes in circumstances that she failed to prove, I think was the evidence that it was in the best interest of this child to stay under the guardianship. I think that even if she had made these changes and she was now off drugs and was not involved in criminal activity, clearly this child was integrated into the family of the guardian, had lived there or had a room there, a bed there, for his entire eight years on earth. He had gone to school in Illinois. His therapist, doctors were here. His entire extended family on both mom's side and dad's side was here. And additionally, he, due to the instability in his life, due to his parents, really required stability. And due to the mother moving to Arizona, termination of this guardianship meant that he was going to have to move across the country to live in a place he'd never been with no support system other than his mother and no family, a new school, new doctors, new therapist. And also, as shown by the record, due to the mother's animosity towards the guardian because of the litigation, she made multiple attempts to punish the guardian via a no contact order and a denial of visitation. She did not want to allow the guardian to see this child ever again. So I think that that really, I think that the court ignored a lot of those circumstances, in addition to the circumstances of the mother leaving and going back to Arizona seven months before judgment and just cutting off almost all contact with this child. So when the trial court is referencing how much the child wanted to see his mother and loved his mother, it's ignoring the fact that after she went back to Arizona, this child was completely devastated, was angry, did not want to see her. And it really undid all the progress that had been made in his trust towards her and their relationship. Counsel, under what authority did the trial court order relocation to Arizona? Under the Probate Act, and they acknowledged that it was under the Probate Act, and they said that they felt that the best interest factors of the Probate Act and the Marriage Act were similar, and therefore it had the authorization to order relocation under the Probate Act. Okay. And the best interest factors that you're talking about are to assist the court in determining whether or not guardianship itself should be terminated. Is that right? Under the Probate Act, yes. Okay. Does the Probate Act allow for or grant the trial court authority to order relocation? No, it is completely silent of that authority. The only mention of relocation is a provision that says that the guardian needs to request permission to relocate. It does not contain any authority for the court to order relocation of a child. Okay. Thank you. Thank you, Your Honor. Moving on, in addition to the error in terminating the guardianship, there were numerous errors of law made in this case, which I think that the law is clear that the trial court was not allowed to do, the first being relocation, which we just discussed. The court simply does not have subject matter jurisdiction to order relocation. All they can do is terminate the guardianship. It's just like any other wardship. Their authority only exists through the wardship. There is no continuing jurisdiction under the Probate Act like there is under the Marriage Act. They do not have any authority to modify the judgment or the termination of the guardianship or to continue to enter visitation for anyone. Once the guardianship was terminated, they had no control over what happened to this child, and the guardian could not come back and seek more visitation. All he could do was perhaps petition for another guardianship. He could not come back and say, oh, I want more visitation. So I think that the court really exceeded its jurisdiction there, and as we saw by the record, the court's belief that it had somehow entered an allocation judgment under the Marriage Act really prevented the guardian from being able to seek the relief he's entitled to before the family court because the probate court did and was going to continue to enter orders in the guardianship case, even though the guardianship was terminated. And those orders continue to conflict with the orders of the family law court. And it's clear that those are different types of cases. The custody under a guardianship is not the same as the custody that's allocated in a parental allocation case. Additionally, the errors in due process were very serious. The trial court refused to grant a continuance under any circumstances, claiming that the guardian had agreed to the trial date, so no continuances, even though new evidence came up that was relevant, even though an amended complaint was filed, even though an order of protection case began in November, just before trial. The court didn't hear any witnesses testify from DCFS. The guardian could not get mental health providers in. After the trial was set, the child had made statements that he wanted to die to his therapist, and therefore the therapist would have been helpful, testimony would have been helpful, and we were simply unable to get them in. We did subpoena the mental health records, and the court said it would conduct an in-camera review, but it never did. It never conducted an in-camera review. It never made a ruling on relevancy, and we never called the mental health professionals. And as you saw from the record, the court went ahead and relied on some of those records anyway, which was completely improper. Additionally, they asked for a supplemental report from the guardian ad litem after the proofs were closed. And it is true that we did not object, but that's because we asked the court if it was reopening the proofs, and it said no. It said, no, we are not reopening the proofs. However, we need to still determine parenting time for Jasmine, the mother, if this guardianship remains in place. So it'll be relevant in that respect, but it will not be evidence. And then the court used it as evidence and referenced it specifically. As those statements from those witnesses, they referenced it specifically as support for its decision. I think that the issue of the stay is very clear. The court, if it was going to order relocation, I think the stay would have been very helpful. This child, as seen by the record, was really left in limbo at the end of this case, because there was a pending petition to restrict in family law court with serious allegations against the mother. And additionally, this child was left with a relative for 10 days because the mother was in Arizona and would not come and get him. So after termination of the guardianship, he was left in, I think it was Wisconsin, with a grandmother for 10 days. So I think the stay would have prevented that. I think that a stay would have allowed the family law court to determine these issues, to allocate the parental responsibilities and to do so under the more stringent factors of the Illinois Marriage Act. And that would have protected the best interests of this child. In conclusion, I'm not sure why the trial court was so determined to get this child back to its mother, but it did not do so in accordance with the evidence. The evidence before the court, which did not include the mental health records, clearly showed that nothing had really changed and that this child really needed to stay in Illinois with the guardian. Now, if Jasmine had lived in Illinois, things might have been different, but she doesn't. She lives in Arizona. She lives across the country. And the court had never even granted visitation in Arizona. In addition, I think that even with all, again, with all the due process violations, the evidence was clear. The court has to make its ruling based on the evidence, and it has to do so in accordance with the law, and it did not do that. So therefore, we believe the judgment should be reversed. Okay. Thank you. Ms. Brandy Chudova, you may argue. Yes, Judge. I'm here. May it please the court and counsel. I'm here on behalf of James Ort, Jr., who is the son of the guardian and the biological father of the child. I'm going to begin with the 14th Amendment, which I know all of you know, but in this, I think it bears repeating. All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law. This 14th Amendment is paramount to our system of justice, and due process is required before the rights of someone are taken. That includes the rights to their child. In this case, a manifest injustice was done to my client because three separate petitions to terminate the guardianship were filed and never served, despite knowing where my client was. Now, ultimately, arguments can be made. I know that they're making an argument with respect to Rule 104. An initial summons and subpoena of a petition such as this are different from failing to serve on a paper. But ultimately, in this case where the issue resides, and the real issue resides, is the compounding of errors because this court, as you so aptly pointed out, this guardianship court not only terminated the guardianship, but then entered orders with respect to the parental allocation. My client in November of 2023 filed a motion in the family court with respect to the parental allocation, and that was the appropriate place to do it. Had the guardianship simply terminated and it gone to the family court, he could have made arguments as to where, even if the guardianship was terminated, with respect to the restrictions that he felt were necessary to the mother. Do I believe the guardianship should have been terminated? Does my client? No. But ultimately, the court had no, not only did not follow due process, it would have been very simple to serve him. He never subjected himself to the authority of the court. He never sought any release in the guardianship case. He was a party to the family law case, and at the point the guardianship terminated, that's where his release relied. He could have objected to the child being sent to Arizona now that the guardianship was terminated, but that couldn't be done because the guardianship court exceeded its authority without having jurisdiction over him. The first time that he appeared through counsel in the case was in June of 2024, and this is after the court had made multiple orders that, frankly, I think, violated the due process of the litigants before it, but he was never served a single one of the three petitions to terminate, even though it was known where he was. A court needs personal jurisdiction to place a judgment against someone. An actual knowledge of the proceedings does not suffice. A judgment entered by a court that lacks jurisdiction over the parties is void and may be challenged at any time, either directly or collaterally. Personal jurisdiction must be established either by service of process, in accordance with statutory requirements, or by a party's voluntary submission to the court's jurisdiction. These petitions to terminate sought a significant change. They are not merely a paper with respect to a motion. He was never a party to the guardianship. It was known where he was, and he should have been served. He was not. Thank you. Okay, thank you. Appellants will have time in rebuttal. Mr. Sommer, you may proceed with your argument. Thank you. May I please support? With regard to... Excuse me, Mr. Sommer, we don't have audio from you. We initially heard you, and then you cut out. Is this better? Well, it's faint. Okay. Mr. Sommer, we don't have audio. I'm going to ask the bailiff if he can contact you and if we can reestablish audio. Father of the child, including the father of the child, Jr. She did meet Anthony Philitoff, who she eventually married and had a child with, who was a very stabilizing factor in her life and continues to be. They had a child, as I mentioned. After moving to Arizona, her living situation was very stable there. She does not have to work because Anthony is able to provide for her. But I think financially supporting the child is one of the least most important factors, and the household is able to financially support the child. Jasmine became active in that community. There was statements by people that lived out there to the guardian ad litem that she was very dependable, reliable, cheerful, friendly. I never saw her under the influence of alcohol. Stopped any alcohol, stopped any drug use. Just really turned her life around. There is more than sufficient facts for the court to find. So there was a change in circumstance, especially if the court looks at this in the light most favorable to Jasmine. There was a change in circumstance. The next prong of the test, the next step then, was to determine whether it was in the child's best interest to terminate the guardianship. Again, numerous facts provided to the court about the best interest of the child. The child was having a good relationship with mom and with mother's new husband. The interruption, the seven-month interruption that Senior tries to rely on was created by Senior. That came about literally on the eve of the beginning of trial when Senior obtained an emergency order of protection against both Jasmine and Jasmine's husband. It was that order of protection that caused a stop in mom's parenting time. The emergency order of protection was vacated in September. However, the petition remained pending and was not ruled on then until I believe it was March. So there was still that period of time where the order of protection was pending. Mom, Jasmine, and her husband were fearful of the tactics being used by the opposing party, by Senior, and did think it was best to live in Arizona. So was that the question? Yes. I'd like to hear your version of why these cases weren't consolidated. As far as why they weren't consolidated, each party asked each judge for a consolidation, and neither one of the judges as counseled for Senior State in either one of the courts consolidated. I'd like to follow up with the question that Justice Harris asked you or asked other counsel. Absent the consolidation, what authority is there in the Probate Act for relocation? The Probate Act requires the judge upon termination of the guardianship, obviously, to return the child to the parents. In this case, the only parent that was before the court that petitioned for the termination of guardianship was Jasmine. So the court had to have the child go to Jasmine. And the fact that Jasmine lived in Arizona meant that the child would be relocated to Arizona, no matter where she lived. If Jasmine lived in Taiwan, then the child would have just been relocated to Taiwan. Well, no, because the court still had to consider best interest of the child. And making that determination, the court determined that it wasn't the best interest of the child to be with mom and mom being in Arizona. And there were sufficient facts to support that based on the child's adjustment out there. He hasn't been there very long, but when he was out there, he enjoyed his time out there and was getting to know new people. And there was a history with the child of having moved locally when under the guardianship of the grandparents. And moving from one neighborhood to another, and the judge did fine readjusting to that. Counsel, following up on Justice DeArmond's hypothetical, if the trial court, according to your theory, if the trial court had considered Taiwan in its best interest determination, you're saying it was authorized to enter an order relocating the child. Saying yes, it was. Can you point to anything in the Probate Act? Can you point to anything in the Probate Act, other than the fact that the trial court is to consider best interest factors in determining whether termination of the guardianship is appropriate, that would allow the trial court to enter an order that is, in essence, an order allowing relocation out of state? No. Okay, thank you. But again, it's a consequence of making a determination that guardianship be terminated. Well, why is that a consequence? Why isn't it the trial court grants the petition to terminate guardianship, that the order just simply reflect that the child is to go, the physical custody and parenting agreement that was in place prior to the guardianship should resume? Well, there were other factors in this case that made that difficult because... Well, is that the probate judge's purview? Probate judge knows there's a family law case in the same courthouse that's pending, right? This isn't in a vacuum. That's correct. It isn't. But as a result of the termination of guardianship, the child had to go with mom. Where else was the child? His dad wasn't in the picture, wasn't available. For an extended period of time, he was in jail. He may have been out of jail in December, but his situation was extremely unstable. And there was evidence of that. And the court had not only the authority, but had to award that child back to mom once the guardianship was terminated. Well, the judge could... The mom could simply move to Winnebago County where she had been residing apparently prior to the guardianship being put in place, right? Yes. And in fact, because of the situation, because of the state, basically mother has done that. While that family case remains pending. And which demonstrates her attachment to this child and the extremes to which she's willing to go to, to become reunited with this child. And not only the mother has done that, but so has mom's new husband, Anthony. Despite owning a home in Arizona, by virtue of the situation, they had been spending more time in Winnebago County. And I understand at some point, this is going to be resolved in the family court. Well, that may be the circumstance, but that's not what the court ordered. It was ordered that relocation take place, even though there's been no relocation petition sought in the family law case, where there is statutory provision for it. And instead, there's the decision, just because the guardianship is being terminated, to go ahead and allow relocation, even though there is no such authority in the probate act. So the fact that, yeah, that she happens to be there, that's not an effect of the court's action. That's an election that she's made because of the stay in place. But the legal question before us is, was there any authority for the court to order relocation in the probate act? And again, the probate act doesn't expressly state authority. Well, that's kind of why it's expressly stated in the family court. You see, you can't just assume that, well, they don't say it, but they mean it. It doesn't work that way. And again, for the time being, with the situation the way it was, subject to future proceedings in the family court, by virtue of the termination of the guardianship, the child went with mom. The child went to the mother. That's fine. But the court then went a step further and allowed the relocation. That's not within the probate court's authority. They have the authority to make the determination in the best interest of the child that the child should go to the mother. But without relocation, the mother's obligation is either take the child and stay in Illinois or don't take the child and return to Arizona. But neither of those issues are issues for the probate court to decide. And again, it was a consequence of the termination of guardianship and ultimately… But see, then we're back to Taiwan. See, that was the purpose of the example. We're back to Taiwan. Well, you know what? She lived in Yugoslavia, so we just had to send the kid to Yugoslavia. That doesn't even make any sense. It's not logical, and I would suggest it's not even legal. Well, I want to be clear that the fact that that issue may remain to be determined in the family court doesn't affect the legality of the termination of guardianship. No. I'm not saying that. I'm saying not the legality of the termination. I'm saying taking it a step further and ordering relocation. It is apparent that this case is not over. But as far as… I don't want the appellate court to lose sight of the fact that that part of the order terminating guardianship is valid and is supported by the evidence. And the appellate court should give great deference to the trial court's determination with regard to the termination of guardianship. Because the trial court's in a far better position than the appellate court to judge the credibility of witnesses, weigh the evidence, determine the best interest of the child. And when the trial court might have been faced with multiple reasonable inferences to draw from the facts, including those by counsel, the counsel for junior is indicating. The appellate court will accept those inferences that support its rule. And again, everything must be taken in the light most favorable to Jasmine. And as far as the whether the court abused its discretion or whether its decision to terminate the guardianship. Clearly, it was not against the manifesto. Now, so what if the trial court considers an improper factor in its determination, whether to terminate guardianship, that would be a matter for de novo review. Would you agree? And improv that on that particular factor. But. Just if the trial court considered an improper factor, the question as to whether or not it was or was not an improper factor for the appellate court, that would be a matter for de novo review. Is that right? I believe that's right. OK, thank you. So, again, with regard to. With regard to the termination of the guardianship, there is. A great deal of evidence that justified the termination of the guardianship. The best interests of the child. Are well served by the termination of the guardianship. The child has a stable environment to return to. The child has a new sibling that is going to establish a relationship. And again, none of the none of the facts that junior. Sounds to argue. And again, the courts and the evidence most favorably to Jasmine as far as termination. Thank you. Okay, thank you. Mr. Summer is Mindy to the rebuttal argument. Thank you. I would 1st, like to mention that a petition for relocation was actually filed by the mother in the family law court after the probate court declined consolidation. She went ahead and filed a petition for relocation. The father had objected and that was still pending and the family law court was aware of that. So, that was still pending. I think it's clear that the probate court does not have the authority to order relocation. Moving on to the termination of the guardianship. The mother. Returning to Arizona had nothing to do with the order of protection, because in an order of protection, you can still have visitation. You can petition for visitation. And she did not do. So she just went back to Arizona. She wanted to have visitation there. That was the guardian and light and was in agreement with that. However, she wanted to send her husband to come and get the child after they had not seen them for months. The guardian wanted her to come personally, and she would not. So, when that visit didn't happen, she just stopped any attempts or visitation in the order of protection case, which was eventually the emergency order of protection was dismissed. She stopped any attempts and then she stopped calling the child and did not send him a birthday or Christmas gift. I do not know how sending of a birthday or Christmas gift could result in an order of protection, but that seems to be what she is arguing. That does not seem like a reasonable excuse for her returning to Arizona and cutting off all contact with the child, which resulted in emotional and mental harm to this child. Counsel referenced the amazing relationship this child had with his mother that completely fails to consider the last 7 months of this case. That was before. The mother went back to Arizona. After that, the child did not want to see her. He did not want to talk to her. He was very upset. So, I think that that argument is completely irrelevant considering the 7 months at the end of the case. I think that the statements regarding her reliability and her lack of drug use in Arizona, again, those were statements from witnesses that were interviewed by the guardian ad litem after proofs have closed and were not supposed to be considered evidence. It was her burden of proof to prove these changes, not the guardian ad litems. She could have called those witnesses and did not. The only testimony of the changes were her and her husband, that she was not on drugs and about this amazing life. Those 4 witness statements that were relied upon by the trial court and just mentioned by counsel, those were not evidence and should not have been considered. The only evidence before the trial court were her statements, really, regarding this new life in Arizona. Counsel also mentioned that the child did great in Arizona. The child did not visit Arizona until after this case was over. After judgment was entered. At the time judgment was entered, this child had never been to Arizona. Had never been there. Never. So, I think that the trial court really thought either was basing its judgment on speculation that everything would be okay in the future or on some idea that it had some sort of continuing jurisdiction or control over what happened in the future. And it did not. Once this guardianship was terminated, they had no control over what happened to this child unless another guardianship was put in place, which is a difficult burden. So, I think that there were a couple errors there that really, really had an impact on this case. I think that the comments about the relocation, how dad was in prison, none of that evidence was ever introduced in this case. All the court had to do was terminate the guardianship and then maybe mom took the child to Arizona, but she was obligated to abide by orders of the family law court to come back if they ordered her to do so. And as we saw, the court did order that ordered the child to be returned to the guardian and Jasmine refused to acknowledge those orders and continue to go back to the probate court to get more orders, which made it impossible for the family law court. To to enter orders are for the guardian to receive relief before the family law court. I do believe that this court would have continued to enter orders and it would have just been a never ending series of conflicting orders. And that that is not just and that is not fair to any of the litigants. That's all your honor. Thank you. Okay, thank you. And I believe that's the conclusion of time. Thank you counsel for your arguments. The matter will be taken under advisement and a written decision will be issued.